ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

KEVIN J. BARRY (CABN 229748)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6840
    FAX: (415) 436-7234
    Email: kevin.barry@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 23-CR-0016 SI |
| Plaintiff, | **UNITED STATES' MOTION TO REVERSE ORDER OF RELEASE** |
| v. | Hearing Date: December 8, 2023 |
| RONNIE MITCHELL, | Hearing Time: 11:00 am |
| Defendant. | Hon. Susan Illston |

## INTRODUCTION

The United States respectfully requests that the Court reverse the order of release of Defendant Ronnie Mitchell by Judge Kim. ECF No. 30. On October 12, 2021, Defendant Mitchell was in possession of an AR-style assault weapon loaded with 58 rounds of military-grade ammunition. Mitchell poses a serious risk of danger to the community that cannot be mitigated by any conditions. Based on his most recent conduct with police that resulted in a high-speed chase, and based on the issuance of a bench warrant in a prior case, he also poses a risk of flight. For these reasons, the Court should reverse Judge Kim's order of release and order that Defendant Mitchell be detained until trial.

## FACTS AND PROCEDURAL BACKGROUND

On October 12, 2021, law enforcement officers were conducting surveillance on Defendant Mitchell because he was wanted for two outstanding warrants, including one related to an earlier high-speed chase and crash during which Mitchell fled from police. Mitchell is a member of the Eddy Rock gang,[1] a violent street gang based in the Fillmore neighborhood of San Francisco. Eddy Rock has been involved in a host of shootings and other acts of violence with its rivals in the neighborhood and elsewhere.[2] Officers observed him driving a grey Dodge Charger and then saw him back into the driveway of a residence a 1666 67th Ave in Oakland. Mitchell got out of the car and was talking with a number of other individuals who were on the porch and the front stairs. Officers then arrested him. After his arrest, officers located an AR-style firearm in the well of the driver's side of the Charger. That weapon was loaded with 58 rounds of 5.56 caliber and .223mm ammunition.[3]

---

[1] Among other sources, this information is contained in police reports and search warrant affidavits that have been produced to the defense in discovery.

[2] The violent rivalry between Eddy Rock and the Central Divisadero Players (CDP) was covered at length in a RICO / VICAR murder trial before Judge Orrick that focused on several members of CDP. *United States v. Alfonzo Williams, et al.*, 13-CR-0764 WHO (N.D. Cal.). In a 2017-18 trial, witnesses described routine acts of violence between these gangs. *See id.*, RT 4405ff, 4418-21, 4423-24 (describing rivalry in general); 4438, 4448; 4475-78, 4482-83 (discussing murders of CDP members by Eddy Rock); 4464-65, 4489, 4513, 4757 (CDP shootings at Eddy Rock members, including at a funeral for a slain Eddy Rock member); GX 389 (video of funeral shooting)).

[3] Ammunition of 5.56 caliber is sometimes referred to a "NATO round," as this dimension was developed for use by NATO military forces. *See, e.g.*, https://en.wikipedia.org/wiki/5.56%C3%9745mm_NATO.



Basically, this is an assault rifle without a buttstock.  Mitchell not only had it in his vehicle; it was in the driver's well of the car.  In fact, based on the size of the weapon and its loaded magazine, it likely made driving somewhat awkward, but Defendant believed that it was necessary to have it at hand.

When officers effected the arrest of Mitchell at 1666 67th Ave in Oakland, they conducted a sweep of the premises and obtained consent to search from the property owner.  Inside the residence and in a shed in the backyard, they found an arsenal of weapons and ammunition, including additional assault-style firearms and high-capacity magazines.



Although the government has not charged Mitchell with constructive possession of these firearms, it is significant that these weapons were in the residence where Mitchell—armed with his own loaded assault weapon—arrived and backed down the driveway.

After his arrest, Mitchell was charged by Complaint with being a felon-in-possession of a firearm. ECF No. 1. While officers arrested Defendant in October 2021, he did not appear to face federal charges in the Northern District until January 9, 2023. ECF No. 6. The reason for the delay was that Mitchell was serving a state prison sentence for felony convictions for evading police and for burglary. Soon after he appeared, the Grand Jury returned an Indictment alleging a violation of Section 922(g)(1). He has pleaded not guilty, and the Court set trial for February 26, 2024. ECF No. 27.

On November 30, 2023, the parties appeared before Judge Kim for a bail hearing. Previously, the Defendant waived the issue of detention.[4] After reviewing the January 13, 2023 Pretrial Services Report and the Addendum Report of the same date, and after hearing argument by the parties, Judge Kim indicated that she would release the Defendant into the custody of his father. The Court then set December 11, 2023, as a further detention hearing, where a bond will be executed. The Court also indicated that the Court's minutes for the November 30, 2023, would reflect an Order of release that can be subject to appeal. ECF No. 30.

## ARGUMENT

### I. The Legal Standard is De Novo

In assessing whether Defendant Mitchell presents a danger to the community or a risk of flight, this Court conducts a *de novo* review of the factors under Title 18, United States Code, Section 3142. "[A] district court's review of a magistrate's detention order is to be conducted without deference to the magistrate's factual findings." *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990). Thus, this Court must make its own determination regarding a Mitchell's detention or release.

There are several relevant statutory factors in determining whether pretrial detention is appropriate: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). These factors all indicate that Defendant Mitchell presents a danger to the community and a risk of flight and that neither can be mitigated by the imposition of any conditions of release.

### A. The Nature and Circumstances of the Offense Charged (18 U.S.C. § 3142(g)(1))

There is no question that Defendant's crime—18 U.S.C. § 922(g)(1)—is a serious offense because of the danger posed by convicted felons who arm themselves. *United States v. Walker*, 68 F.4th

---

[4] The Minute Order for Defendant's initial appearance on the Complaint and Indictment do not indicate a formal waiver, instead noting simply that Defendant was remanded, but there had been no hearing on the government's motion for detention prior to November 30, 2023. *See* ECF Nos. 6, 13.

US APPEAL OF RELEASE ORDER   5
23-CR-0016 SI

1227, 1238 (9th Cir. 2023) ("while an offense under § 922(g)(1) is considered nonviolent, it is a serious felony") (referencing Bail Reform Act factors); *Caron v. United States*, 524 U.S. 308, 316-17 (1998) ("Massachusetts treats [convicted felon] petitioner as too dangerous to trust with handguns, though it accords this right to law-abiding citizens. Federal law uses this state finding of dangerousness in forbidding petitioner to have any guns."). In fact, the firearms offense in the Indictment is one of the serious crimes specifically listed in Section 3142(g) that the Court should take into consideration in determining whether bail is appropriate.

The first factor under Section 3142 weighs in favor of detention for a person charged with a generic Section 922(g)(1) offense, including someone convicted of fraud who has a firearm in a safe in his bedroom. Here, however, the circumstances are significantly more grave. As discussed below, Defendant has been convicted of multiple felonies, including crimes of violence. He is a gang member, and he was found driving around with an assault weapon loaded with nearly five dozen rounds within easy reach.

### B. The Weight of the Evidence Against Defendant (18 U.S.C. § 3142(g)(2))

Although the weight of the evidence is the least significant factor in the analysis, it is nonetheless relevant. *Winsor*, 785 F.2d at 757. Here, the evidence against the defendant is extremely strong. Police officers were seeking to arrest Mitchell on a number of outstanding warrants. Because officers knew Mitchell was wanted and was an active gang member, SFPD officers obtained warrants to track his phone and his car in order to locate him.

On October 12, 2021, officers were conducting surveillance on Mitchell. The locations provided by both the ping on his phone and the tracker on his car were in sync, which indicated to officers that Mitchell's phone was traveling with the car. Eventually, officers saw the Charger drive towards 67th Avenue. It arrived at a residence at 1666 67th Avenue and backed into the driveway next to the house, out of view of the officers. Shortly thereafter, officers saw Mitchell walking on the driveway from the area where the Charger was parked and toward the front of the house. While there, Mitchell smoked with several individuals in the front of the house. Officers then approached Mitchell and placed him under arrest. After his arrest, officers found the key to the Charger on Mitchell's person, and some time later, Mitchell asked officers to retrieve his sweatshirt from the Charger in the driveway because he was

cold.

As seen above, the loaded firearm was in plain view in Defendant's car, and a records check revealed that it had been stolen from Natchez, Mississippi on October 11, 2020.

Thus, the weight of the evidence weighs in favor of detention.

**C. The Defendant's History and Characteristics (18 U.S.C. § 3142(g)(3)(A))**

Defendant's history and characteristics alone are sufficient to support his detention. The Pretrial Services Report for Mitchell shows that although he is only 27 years old, he appears to have eight felony convictions, including crimes of violence. The most serious crimes for the purpose of this detention appeal are his 2016 convictions for Threaten a Crime with Intent to Terrorize; two counts of Assault with a Deadly Weapon, Possible Great Bodily Injury; being a Felon in Possession of a Firearm; and Carrying a Loaded weapon. These convictions are the result of his arrest for First Degree Murder: Shooting from a Vehicle, which led to subsequent counts of Attempted Murder, Assault of a Person with a Semi-Automatic Firearm, and Shooting at an Inhabited Dwelling. The parallels to the present case are both clear and chilling.

To support the risk of flight, Defendant's criminal history reflects a February 4, 2015 bench warrant for failure to appear; another bench warrant for failure to appear from September 3, 2015, and Mitchell's highly dangerous but unsuccessful evasion of arrest on May 15, 2015. On that date, officers observed Defendant driving erratically on highway I-580. When they attempted to pull him over, he and the officers left the freeway on an offramp. When officers left their patrol car to approach, Defendant turned his car on, accelerated, made a U-turn, and got back on the highway. Defendant fled, reaching speeds of 130 miles per hour. He almost hit several cars before other officers deployed a spike strip and flattened his tires. Mitchell's car began to slow down and drift to the right, but it suddenly veered to the right, sped up an embankment, and then rolled over. As the crash happened, officers observed a passenger being ejected from the car. (The police report does not indicate what this person's condition was.). When the car came to rest, officers saw Mitchell run up the embankment on foot, but he was later arrested nearby.

The fact that Mitchell has several parole violations and that he possessed the loaded AR-15 at issue in this case while on parole indicate that he poses a risk of flight. *See Winsor*, 785 F.2d at 757

("Winsor's lack of any ties to the community and the fact that he is currently on parole or probation from another jurisdiction indicate that he is a flight risk. The district court correctly concluded that pretrial detention is warranted.").

A key factor for the Court to assess with respect to the danger that Mitchell presents to the community is the fact that he is a member of the violent Eddy Rock street gang. For the purpose of the detention hearing, the government proffers that multiple San Francisco Police Department (SFPD) officers with experience with Western Addition street gangs in general and with Defendant Mitchell in particular would establish that Eddy Rock is a violent gang and that Mitchell is a member of that enterprise. For instance, in the incident report of Mitchell's October 12, 2021 arrest, four separate SFPD officers identified Mitchell as a member of Eddy Rock.

Further, one of the reasons proffered by defense counsel at the November 30 detention hearing that Defendant Mitchell is interested in changing his lifestyle was the recent killing of two of his brothers. The first of these victims was Steven Mitchell, Defendant's older brother. Steven Mitchell was murdered by gunfire in the parking lot of the Hilborn Apartments, 151 Hilborn St, Vallejo, CA 94590. This murder took place on September 15, 2021, less than a month before Defendant Mitchell was found in possession of the loaded AR-15 firearm in his car. A reasonable inference is that Defendant possessed that weapon either for protection from a similar attack, for the purpose of retaliation against his brother's killers, or for both reasons. As the Court is aware from overseeing RICO and VICAR murder prosecutions, street gangs often devolve into cycles of violence, with killings of one member spurring violent reactions and more killings.

Defendant's second brother who was killed is Paris Moffett, Jr., another member of Eddy Rock and Defendant Mitchell's stepbrother. Mr. Moffett, Jr. was murdered on March 11, 2023 at age 23. He was in a rehabilitation hospital in Oakland when two men entered the facility searching for him. They were encountered by staff who directed them to leave and began escorting them out. While leaving, one of the men went into Mr. Moffett, Jr.'s room, saw him lying in a hospital bed, and shot him multiple times with a handgun, killing him.

Paris Moffett, Jr., is the son of Paris Moffett, Sr., another Eddy Rock gang member and Defendant Mitchell's stepfather. *See United States v. Paris Moffett*, CR 08-0200 MMC, ECF No. 42 at

4 (N.D. Cal. 2009) (Judgment) ("The defendant shall not associate[] with any member of the Eddy Rock gang. The defendant shall have no connection whatsoever with the Eddy Rock or any other gang. If he is found to be in the company of such individuals or wearing the clothing, colors, or insignia of the Eddy Rock, or any other gang, the court will presume that the association was for the purpose of participating in gang activities.").

Remarkably, on May 26, 2021, Paris Moffett, Sr. engaged in a high-speed chase that was almost identical to the chase in which his stepson was involved just two weeks before. At that time, Moffett, Sr. was serving a term of supervised release following a ten-year sentence for possession with intent to distribute crack cocaine and being a felon in possession of a firearm. *Id.* On May 26, 2021, CHP officers observed Moffett, Sr. speeding on Route I-280 in San Francisco. Officers pulled him over, and he stopped, but as officers were writing a ticket and seeing if he had a search clause, Moffett, Sr. turned on the car and sped off, with officers in pursuit. As he was feeling, Moffett, Sr. crashed, and he abandoned the car on foot. While running away, he threw away a handgun, a high-capacity magazine, and a drum magazine. *See United States v. Paris Moffett*, CR 22-0100 MMC (N.D. Cal. 2022) (Presentence Report) ¶¶ 6-22.

While defense counsel has proffered that the deaths of his two brothers has served to spur a change in Defendant such that he no longer poses a danger to the community, there is no evidence of that. In fact, Defendant's immediate reaction to the tragic murder of his brother Steven Mitchell—arming himself with the loaded AR-15 and having it ready for retaliation or defense—leads to the reasonable inference that he may react similarly to the death of this stepbrother, Paris Moffett, Jr.

In fact, other than the suggestion that these two tragedies will change him, Defendant offers no counter to the clear and convincing evidence of convictions, violence, criminal conduct while on parole, parole revocations, and failures to appear. That history heavily weighs in favor of detention.

### D. The Nature and Seriousness of the Danger to the Community Posed by Defendant's Release (18 U.S.C. § 3142(g)(3)(A))

As discussed above, Defendant is a member of a violent street gang, and two fellow members of that gang—and more importantly, two members of his family—have recently been murdered. Defendant has been in custody since weeks after the first of these killings, which has presented him with

little opportunity to retaliate. Even barring the possibility of Defendant's retaliation, his status as a potential target of violent action by rivals of Eddy Rock puts the public at risk.

Further, Defendant associates with other individuals who pose a grave risk to the public, as seen by the large cache of firearms and ammunition that officers seized at the house where Defendant parked on October 12, 2021.

Even without these facts as context, Defendant's possession of a loaded assault weapon in his car, with his long history of violence and criminal convictions, poses a sufficient threat to the public that strongly supports his detention as a danger to the community. *See Walker*, 68 F.4th at 1238; *Caron v. United States*, 524 U.S. at 316-17.

His status as a risk of nonappearance also poses a danger to the community. If another bench warrant for failure to appear had to be issued in this case, and if officers had to arrest him, he would present an incredible risk. His possession of a dangerous firearm, loaded with 58 rounds of military grade ammunition, his access to numerous similar weapons through his associates, and his history of fleeing police at high speed through freeway traffic all indicate that police and the public would be in grave danger.

## CONCLUSION

For the reasons set forth above and in the Pretrial Services Reports, the government respectfully find that Defendant Ronnie Mitchell presents a risk of danger to the community and a risk of flight and that these risks cannot be mitigated through any condition or combination of conditions. The government requests that the Court reverse Judge Kim's order of release and order that Defendant Mitchell be detained until trial.

DATED: December 1, 2023                    Respectfully submitted,

                                                                        ISMAIL J. RAMSEY
                                                                       United States Attorney

                                                                       ___/s/ *Kevin J. Barry*_____
                                                                       KEVIN J. BARRY
                                                                       Assistant United States Attorney